IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRIAD RX, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14-cv-01459 |
| | ) |
| EXPRESS SCRIPTS, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF TRIAD RX, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELINIMARY INJUNCTION**

Plaintiff Triad Rx, Inc. ("Triad") respectfully submits this Reply Memorandum in Support of its Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 3) to address factual issues raised by Defendant Express Scripts Inc. ("ESI") in its Memorandum in Opposition ("Defendant's Opposition") (Doc. No. 15).

**1.    Introduction**

On July 24, 2014, ESI sent Triad a notice of termination ("Notice of Termination"), which purported to terminate Triad for a single reason. (Notice of Termination, Doc. No. 1-1). The Notice of Termination purported to immediately terminate the relationship between Triad and ESI because Triad allegedly made a misrepresentation when it certified to ESI that it did not "ever waive or offer a reduction of member copayments." (Notice of Termination, Doc. No. 1-1). In doing so, ESI invoked the "Immediate Termination" provisions of the Provider Agreement and Provider Manual, both of which require written notice, to discontinue the Provider Agreement. (Notice of Termination, Doc. No. 1-1).

At present, ESI has received only the single Notice of Termination which identifies the sole basis for termination as an alleged misrepresentation regarding copayment discounts.

1

However, ESI now raises an additional basis of termination, alleging that Triad accepted prepopulated and preprinted prescription pads for controlled substances in violation of the Provider Manual. (Defendant's Opposition, Doc. No. 15, p. 6). Although not included in the Notice of Termination, ESI's assertion that Triad accepted preprinted prescription pads for controlled substances is misleading and will be addressed at the hearing on September 19, 2014 before the Court.

2. **Triad did not Waive or Discount Member Copayments**

The Provider Agreement between Triad and ESI specifically contemplates the acceptance of manufacturer coupons to cover all or a portion of the cost of a member patient's copayment.

Section 2.5 of the Provider Agreement states, in part, as follows:

> **Coupons**. Provider acknowledges that it is the Member's or Provider's responsibility to obtain reimbursement from the responsible party for the amount of any **coupon** accepted by Provider for a Covered Medication. Provider shall: (1) accurately apply all coupons to a Member's claim, **including the Copayment**, and (b) not seek additional reimbursement from Sponsor or any other insurer when such reimbursement would result in Provider being paid more than its contracted rate hereunder.

Section 2.5 of the Provider Agreement (emphasis added).

Contrary to ESI's assertion, by simply accepting coupons in the form of manufacturer discount programs, Triad has not violated either the Provider Agreement or Provider Manual. Triad was party to an Administrative Services Agreement with Valunet Health, LLC d/b/a MedHealth, Rx ("MedHealth"). Essentially, the Administrative Services Agreement between MedHealth and Triad allowed Triad to fill prescriptions for MedHealth member patients who were eligible for coupons towards their copayments to be paid by MedHealth. ESI claims that Triad did not provide ESI "with a single coupon." (Defendant's Opposition, Doc. No. 15, p. 3). However, any claim that the MedHealth Program was not a coupon simply because members did

2

not present physical coupons is merely a red-herring. In reality, if an individual was a member of the MedHealth Program, then they may be entitled to a reduction of their out of pocket copayment with the remainder to be paid by MedHealth. Thus, for ESI to claim that Triad must only accept physical coupons to comply with Section 2.5 of the Provider Agreement is not supported by either the Provider Manual or Provider Agreement and is a distinction without a difference.

ESI also alleges that Triad failed to collect full copayment amounts from MedHealth members; however, that is patently false and not supported by evidence. ESI directs the Court to Member R and also Member GG.

### A.  Triad collected the full copayment for  Member R's prescription medication

ESI alleges that Member R paid no copayment; however, the documentary evidence provided to ESI clearly shows that Member R paid $1,837.93 towards his/her prescription. Member R was involved in an accident that necessitated her prescription medication and also resulted in litigation. Upon information and belief, $1,837.93 was paid out of Member R's proceeds from litigation and was collected after Member R was surveyed by ESI. $1,837.93 was paid to Triad on April 15, 2014 while Member R sent his/her survey response to ESI on April 10, 2014. The remaining amount of the copayment was paid by MedHealth.

### B.  Triad attempted to collect the full copayment from Member GG

Member GG received two prescriptions from Triad on March 25, 2014 – one was billed at $3,200.42 and the other was billed at $2,888.49. The total copayment for these prescriptions was $677.32. In his/her survey response to ESI, Member GG indicated that he/she was obligated to pay $15 for each prescription but that she had not yet done so. Triad collected all but approximately $30 of copayment through MedHealth. Despite efforts to collect the full

3

copayment from Member GG, payment has not been forthcoming. As such, on May 5, 2014, Triad cut off Member GG's ability to refill his/her prescription due to lack of payment.

One can assume that Member R and Member GG represent ESI's best evidence that Triad has not collected copayments from members; however, Member R's account is fully reconciled and all but approximately $30 of Member GG's copayment was collected in connection with those prescriptions. In addition, ESI contemplates the use of coupons as evidenced by the plain language in Section 2.5 of the Provider Agreement, *supra*. Simply put, Triad's participation in the MedHealth Program was not a violation of the Provider Agreement or Provider Manual. In addition, Triad has a stated policy of collecting copayments due from patients and the evidence in the record supports the conclusion that Triad did so.

3.  **Conclusion**

ESI alleges that Triad made a material misrepresentation in certifying that it does not waive or discount member copayments. However, evidence in the record instead supports Triad's truthful representation that the full copayment for ESI member patients is collected to the extent possible. Finally, Triad will address ESI's allegations that Triad accepted preprinted or prepopulated prescriptions containing controlled substances during the hearing on September 19, 2014.

Respectfully submitted,

**EDGAR LAW FIRM LLC**

/s/ *Alexander T. Ricke*

| | |
|---|---|
| Alexander T. Ricke | No: 65132MO |
| Michael D. Pospisil | No. 49139MO |
| Boyce N. Richardson | Mo. 62509 |

*(Admission to the Bar of the Court Pending)*
1032 Pennsylvania Avenue
Kansas City, Missouri 64105
Tel. 816-531-0033
Email: atr@edgarlawfirm.com
            mdp@edgarlawfirm.com
            bnr@edgarlawfirm.com

*Counsel for Plaintiff Triad Rx, Inc.*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed on this 17th day of September, 2014 with the Clerk of the Court using the CM/ECF system which served a copy upon the following:

Sarah C. Hellmann
Tanya M. Maerz
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
Clayton, MO 63105
Sarah.Hellmann@huschblackwell.com
Tanya.Maerz@huschblackwell.com

*Counsel for Defendant Express Scripts, Inc.*

/s/ *Alexander T. Ricke*

5